IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROSE PICKETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MICHAEL CHERTOFF, Secretary, | § | CIVIL ACTION NO. H-06-1092 |
| Department of Homeland | § | |
| Security, Immigration, and | § | |
| Customs Enforcement, Federal | § | |
| Protective Service, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Rose Pickett, brings this action against defendant, Michael Chertoff, Secretary, Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), and Federal Protective Service of the United States (FPS), for employment discrimination based on race, sex, age, and reprisal in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, et seq. (Title VII), 42 U.S.C. § 1981, the Texas Commission on Human Rights Act, Texas Labor Code 21.051, and Texas common law.[1]  Pending before the court are Defendant's Motion to Dismiss and Motion for Summary Judgment (Docket Entry No. 7). For the reasons explained below the defendant's motions will be granted.

---

[1] See Plaintiff, Rose Pickett's, Original Complaint, Docket Entry No. 1, p. 3.

## I.  Undisputed Facts

Plaintiff has been employed by the federal government for over twenty years and by the FPS for over nineteen years.  For most of that time FPS operated under supervision of the General Service Administration (GSA).  Since March 1, 2003, FPS has operated under supervision of the DHS.

In February of 2004 ICE initiated an investigation of a security guard employed by Superior Protection Security (SPS), an entity contracted by FPS to provide security at various federal facilities.  On February 27, 2004, FPS special agent Mike Bonilla, together with a representative from the Office of Inspector General (OIG) approached plaintiff about the investigation.  On March 2, 2004, plaintiff's supervisor, Chief of Operations Patrick Moses, informed plaintiff that Bonilla insisted that plaintiff's office be closed because she was not cooperating with the investigation. Later that day in the presence of plaintiff's co-workers, Bonilla and a federal police officer removed plaintiff from her office while the building manager re-keyed the lock, sealed the entry with yellow tape marked "crime scene," and gave the new key to Bonilla. On March 3, 2004, DHS-OIG Special Agents Ava Malone-Johnson and Bert Aldrete interviewed plaintiff about how the security guard under investigation had come to work in the Houston region.

On March 2, 2004, plaintiff held the position of "Protection Specialist, GS-0301-11 (Programs)," the duties of which are described in a 5-page document titled Position Description

#770PC42.[2]  On March 10, 2004, Moses assigned plaintiff to "Unclassified Duties."[3]  Plaintiff remained assigned to perform "Unclassified Duties" until November 8, 2004, when Moses assigned her to the position of "Protection Specialist (Programs), GS-0301-11," the duties of which are described in a 4-page document titled Position Description #770P986.[4]

On November 15, 2004, plaintiff received an annual employee performance review and rating prepared by John E. Quackenbush for the period October 1, 2003, to September 30, 2004, on which she was rated "successful" in each of three identified critical elements.[5] Plaintiff refused to sign the performance review, apparently because she had not worked under Quackenbush.[6]  On May 2, 2005, plaintiff received the draft of an interim employee performance review and rating prepared by Gene Pruitt for the period October 1, 2004, to March 31, 2005, on which she was rated "successful" in three critical elements.[7]

---

[2]Plaintiff, Rose Pickett's, Response to the Government's Motion for Summary Judgment, Docket Entry Nos. 13 and 14, ninth unnumbered page (citing Exhibit I attached thereto).

[3]Id. (citing Exhibit J attached thereto).

[4]Id. (citing Exhibits K and L attached thereto).

[5]Id. at tenth unnumbered page (citing Exhibit M attached thereto).

[6]See notation on Exhibit M attached to Docket Entry Nos. 13 and 14.

[7]Id. at pp. 9-10 (citing Exhibits M and N attached thereto).

-3-

## II.  **Plaintiff's Allegations**

Plaintiff alleges that defendant discriminated against her on the basis of her race (Black), sex (female), age (over 40), and reprisal for engaging in activity protected by Title VII by relieving her of her duties as a GS-11 protection specialist in the FPS Houston district office.[8]  Plaintiff also alleges that

> [m]ore insulting, she was locked out of her office, with yellow crime scene tape and a notice attached to the door which read "under investigation."  Plaintiff's requests for administrative leave were ignored, and denied.  To add insult to injury, Plaintiff was instructed to perform clerical duties.  Plaintiff received a downgraded performance rating for FY 2003-2004.  Plaintiff filed prior EEO complaints dating back to 1992, the most recent EEO activity in March 2003.  More important, the same responsible management officials named in prior complaints are named in the current complaint. . . . Moreover, Defendants were aware of Plaintiff's age.  Defendants were aware of Plaintiff's prior EEO activities, because several were named as Responsible Management Officials.  Defendants knew that Plaintiff's supervisor was previous Regional Director of EEO and used that information to retaliate against her.  After complaining to management of discriminatory conduct and filing complaints, Plaintiff was subsequently and repeatedly harassed.  Defendants were fully aware of other employees with the Agency with the same or similar duties as Plaintiff who had similar or more severe incidents within their areas of responsibility, but were not subjected to a criminal investigation, or removal of duties, locked out of their office or performances downgraded . . . Defendants discriminated against Plaintiff by subjecting her to a hostile work environment and unjust discipline solely because of her race, sex, age, and reprisal for EEO activity.[9]

---

[8]See Plaintiff, Rose Pickett's, Original Complaint, Docket Entry No. 1, p. 4.

[9]Id.

### III.   **Defendant's Motion for Summary Judgment**

Defendant argues that he is entitled to summary judgment because plaintiff cannot establish a prima facie case of race, sex, or age discrimination or retaliation.[10]

**A.   Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc), (quoting Celotex, 106 S.Ct. at 2553-2554).  If the moving party

---

[10]Defendant's Motion to Dismiss and Motion for Summary Judgment, Docket Entry No. 7, p. 1.

meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S.Ct. at 2553-2554). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products Inc., 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

**B.    Analysis**

    1.    Title VII and ADEA Claims

        (a)   Applicable Law

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of race or sex, or to retaliate against an employee for complaining of such discrimination. Discrimination based on age is made unlawful by the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (ADEA). Plaintiff may establish a claim of discrimination under Title VII and/or the ADEA either by presenting direct evidence or by using the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973). Since plaintiff has failed to

offer any direct evidence of discrimination, the Supreme Court's decision in McDonnell Douglas, 93 S.Ct. at 1817, provides the applicable framework for analysis.

To establish a prima facie case of intentional discrimination using the McDonnell Douglas framework plaintiff must show that (1) she belongs to a protected class, (2) she was qualified for her position, (3) the defendant made an adverse employment decision based on her race, sex, or age, or in retaliation for having engaged in protected activity, and (4) she was replaced by or treated less favorably than similarly situated employees who were not members of her protected class.  See Abarca v. Metropolitan Transit Authority, 404 F.3d 938, 941 (5th Cir. 2005).  If the plaintiff makes a prima facie showing of discrimination, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its actions.  Id.  If the employer articulates such a reason, the burden shifts to the plaintiff to present evidence showing

> (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or
>
> (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative).

Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). In a mixed-motive case the defendant must respond with evidence that the same employment decision would have been made regardless

of discriminatory animus.  Id. at 312-313.  "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Reeves v. Sanderson Plumbing Prods., Inc., 120 S.Ct. 2097 (2000) (quoting Texas Department of Community Affairs v. Burdine, 101 S.Ct. 1089, 1093 (1981)).  In order to withstand a motion for summary judgment, the plaintiff must reveal a conflict in substantial evidence on the ultimate issue of discrimination.  See Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998).  Evidence is substantial if it is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions.  Id.

    Defendant does not dispute that plaintiff is a member of a protected class and does not dispute that plaintiff is qualified for her position.  Defendant argues, instead, that plaintiff is unable to establish a prima facie case of discrimination because she cannot show that she was treated differently than similarly situated individuals who were not members of her protected class.  Defendant also argues that plaintiff is unable to show that defendant's legitimate, non-discriminatory reason for the actions taken against her were either false or were pretexts for discrimination.[11]

---

[11] Id. at p. 15.

(b)   Legitimate, Non-Discriminatory Reasons

Summary judgment evidence submitted by defendant shows that on or about March 2, 2004, plaintiff's office was locked, sealed, and re-keyed at the behest of an Assistant United States Attorney and an OIG special agent for the purpose of preserving documentary evidence pertaining to the investigation of an illegal alien found on a guard service contract under plaintiff's control.  Thereafter, plaintiff was relieved of her duties, reassigned to unclassified duties, and instructed to share a private office pending completion of the investigation.[12]  By letter dated May 28, 2004, plaintiff's attorney asked that plaintiff be placed on administrative leave due to stress caused by the ongoing investigation.  By letter dated June 22, 2004, Moses denied the request because stress is not recognized by the DHS leave policy as a reason for approving a request for administrative leave.[13]  In the June 22, 2004, letter Moses explained that plaintiff's assignment to unclassified duties would not impact her promotional opportunities or her salary.[14]  In August or September of 2004 Moses was advised that the investigation involving plaintiff had been completed and that

---

[12] Id. at p. 5 (citing Interrogatory Answers of Patrick Moses, Exhibit H attached thereto).

[13] Id. at p. 6 (citing June 22, 2004, letter, Exhibit I, and Leave Policy, Exhibit J attached thereto).

[14] Id. (citing June 22, 2004, letter, Exhibit I attached thereto).

plaintiff could return to her office.[15] When Moses informed plaintiff that she could return to her office and resume her normal duties, plaintiff refused to do so because she did not want to resume responsibility for all contract administration in a specific geographical area.[16] On November 4, 2004, in response to plaintiff's refusal to resume her former duties, Moses reassigned plaintiff to the position of GS-301-11 Protection Specialist position, described in document #770P986,[17] and directed her to return to her former office.[18]

Plaintiff has not presented any evidence that contradicts the defendant's evidence and has not argued that her request for administrative leave met the agency's standards for such leave. Instead, plaintiff asserts that "Joe Orsino a male employee of FPS was placed on administrative leave while under inter-office investigation when he was a Physical Security Specialist."[19]

The Fifth Circuit requires a plaintiff seeking to prove disparate treatment to point to a similarly situated employee who

---

[15] Id. at p. 7 (citing Declaration of Patrick Moses, Exhibit D, and Interrogatory Answers of Rose Pickett, Exhibit G attached thereto).

[16] Id. (citing Declaration of Patrick Moses, Exhibit D attached thereto).

[17] Id. (citing Exhibit L attached thereto).

[18] Id. at pp. 7-8 (citing Exhibit M attached thereto).

[19] Plaintiff, Rose Pickett's, Response to the Government's Motion for Summary Judgment, Docket Entry Nos. 13 and 14, eleventh unnumbered page.

was outside of her protected class and was in "nearly identical" circumstances. See Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005), cert. denied, 126 S.Ct. 1027 (2006) ("To establish disparate treatment, [plaintiff] must show that [defendant] gave preferential treatment to another employee under 'nearly identical' circumstances."). See also Mayberry v. Vought Aircraft, 55 F.3d 1086, 1090 (5th Cir. 1988). Plaintiff argues that Orsino is a similarly situated employee because he was the subject of an inter-office investigation, but fails to present any evidence showing that the circumstances under which Orsino received administrative leave were nearly identical to the circumstances under which she was denied administrative leave.

In response to plaintiff's argument defendant has submitted the declaration of Michele Jekel, Orsino's second line supervisor at the time of his administrative leave.[20] Jekel states that from approximately June of 2002 until September or October of 2003 she served as District Commander in Forth Worth, Texas, and that while serving in that position she was the second line supervisor for Robert Joseph Orsino, who was then a law enforcement officer located in Albuquerque, New Mexico. In approximately May of 2003 Orsino was arrested along with at least one of his children for having a methamphetamine laboratory in his double-wide trailer.

---

[20]Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss and Motion for Summary Judgment, Docket Entry No. 17, and Declaration of Michele Jekel attached thereto.

Although Orsino claimed that he was not aware that this laboratory was being operated out of the trailer that he owned and occupied, Jekel did not find his claim credible.  After consulting with representatives of the GSA's Human Resources (HR) and Legal Departments regarding the action that should be taken based solely on Orsino's arrest, Jekel placed Orsino on administrative leave pending the outcome of the investigation into his alleged criminal conduct because continuing to have him report to work as a law enforcement officer would disrupt the office and damage the GSA's reputation.  Jekel expressly states that "Mr. Orsino was never placed on administrative leave at his own request nor was he placed on administrative leave due to 'stress.'"[21]  Defendant argues that Orsino is not similarly situated to plaintiff because unlike plaintiff he never requested administrative leave but, instead, was involuntarily placed on administrative leave pending the outcome of a criminal investigation that necessarily followed his arrest on drug charges.

Because unlike Orsino plaintiff was not a law enforcement officer, was not arrested, and was not the subject of a drug-related criminal investigation, and because unlike plaintiff Orsino did not receive administrative leave pursuant to a request to alleviate stress, the court concludes that the circumstances under which Orsino was involuntarily placed on administrative leave

---

[21]Declaration of Michele Jekel attached to Docket Entry No. 17.

differ significantly from the circumstances under which plaintiff's request for administrative leave was denied. Because plaintiff has failed to present any evidence from which a reasonable trier of fact could conclude that plaintiff was in nearly identical circumstances to Orsino but unlike Orsino suffered the adverse employment action of being denied administrative leave, the court concludes that plaintiff has failed to raise a genuine issue of material fact for trial on the issue of sex discrimination. Moreover, since plaintiff has failed to present any evidence from which a reasonable trier of fact could conclude that she was otherwise discriminated against on the basis of race or age, the court concludes that she has failed to raise genuine issues of material fact for trial on any of her Title VII or ADEA discrimination claims.

(c)  Retaliation Claim

To establish a prima facie case of retaliation plaintiff must show that (1) she engaged in activity protected by Title VII or the ADEA, (2) she suffered an adverse employment action, and (3) a causal connection existed between her participation in the protected activity and an adverse employment action. See Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996). To defeat defendant's motion for summary judgment plaintiff must offer evidence from which a reasonable trier of fact may infer that retaliation, in whole or in part, motivated the adverse employment

action.  See Evans v. City of Houston, 246 F.3d 344, 355 (5th Cir. 2001).  Defendant argues that "plaintiff cannot show a causal connection between her EEO activity and any of the subsequent actions about which she complains."[22]  The court agrees.

In response to defendant's motion for summary judgment, plaintiff asserts that she engaged in the following protected activities:  (1) In March of 1993 while holding the position of Procurement Technician, classification GS-4/5, plaintiff filed a formal complaint in Federal District Court alleging sexual harassment and discrimination based on race and age against GSA, Public Building Services (PBS), and the FPS; and (2) [s]ometime during 1997-1998 plaintiff filed another grievance against GSA, PBS, and FPS alleging race, age, and reprisal discrimination.[23]  Plaintiff also submits a document titled Global Settlement Agreement executed on February 7, 2002, by plaintiff, plaintiff's attorney, and representatives of the United States of America in settlement of a formal complaint of discrimination then pending before the GSA as Agency No. 99R77FPSRMP(1).[24]

Defendant does not dispute that plaintiff has engaged in activity protected by Title VII but, instead, argues that plaintiff

---

[22]Defendant's Motion to Dismiss and Motion for Summary Judgment, Docket Entry No. 7, p. 18.

[23]Plaintiff, Rose Pickett's, Response to the Government's Motion for Summary Judgment, Docket Entry Nos. 13 and 14, fourth and fifth unnumbered pages (citing Exhibit A attached thereto).

[24]Exhibit A attached to Docket Entry Nos. 13 and 14.

is unable to show a causal connection between her protected activity and any of the subsequent actions of which she complains in this action.  Although plaintiff argues that

> none of the FPS employees who had either direct or indirect contact with [the undocumented alien under investigation] have been subject to the type of harassment, embarrassment, isolation, intimidation, and retaliation that DHS, ICE and FPS have subjected to [her] because of her race, color, gender, reprisal and her sex,[25]

plaintiff fails to offer any evidence from which a reasonable trier of fact could conclude that the actions taken against her were taken in retaliation for having engaged in activity protected by Title VII.

The only protected activity that plaintiff asserts she engaged in prior to the events at issue in this action occurred in 1993, and again in the 1997-1999 time period, i.e., more than five years before the acts of which she complains.  Plaintiff has not offered any evidence disputing defendant's evidence that the investigation that caused her to be removed from her office and temporarily reassigned to unclassified duties was warranted, or that it was initiated and conducted not by her supervisor(s) but by representatives of the OIG operating in cooperation with an Assistant United States Attorney.  Plaintiff has not offered any evidence showing that the people who insisted that she be removed

---

[25] Plaintiff, Rose Pickett's, Response to the Government's Motion for Summary Judgment, Docket Entry Nos. 13 and 14, eleventh unnumbered page.

from her office and temporarily relieved of her duties knew anything about her prior protected activity.  Nor has plaintiff offered any evidence that defendants gave preferential treatment to another employee under nearly identical circumstances.  Because plaintiff has failed to present such evidence, the court concludes that plaintiff has failed to present evidence from which a reasonable trier of fact could conclude that the actions of which she complains were taken in retaliation for her participation in activity protected by Title VII.  Plaintiff's subjective belief that these actions were retaliatory is not sufficient to survive summary judgment when, as here, the employer-defendant has offered evidence of a legitimate, non-discriminatory reason for the adverse actions at issue.  See Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000); Boyd v. State Farm Insurance Companies, 158 F.3d 326, 329 (5th Cir. 1998).

    2.   Section 1981 and State Law Claims

Asserting that Title VII provides the exclusive remedy for employment discrimination claims asserted by federal employees, defendant argues that he is entitled to summary judgment on the claims that plaintiff has asserted under 42 U.S.C. § 1981 and under Texas state law because those claims are preempted by Title VII. Plaintiff has not responded to this argument.

Title VII provides the exclusive remedy for race-based employment discrimination claims raised by federal employees.  See

Brown v. General Services Administration, 96 S.Ct. 1961 (1976) (rejecting a § 1981 claim of race discrimination brought by federal employee as preempted by Title VII). The Fifth Circuit applies the Supreme Court's holding in Brown to mean that when a plaintiff suing a federal employer "relies on the same facts to establish a Title VII claim and a non-Title VII claim, the non-Title VII claim is 'not sufficiently distinct to avoid' preemption." Pfau v. Reed, 125 F.3d 927, 932 (5th Cir. 1997), vacated on other grounds, 119 S.Ct. 32 (1998). In Pfau the Fifth Circuit held that plaintiff's common law claim for the intentional infliction of emotional distress was preempted by Title VII. Since plaintiff has failed to articulate any factual distinction between the basis for her Title VII claims and the basis for the claims that she has asserted under § 1981 and/or state law, the court concludes that the claims that plaintiff has asserted under § 1981 and state law are preempted by Title VII because they arise out of the same facts as the employment discrimination and retaliation claims that she has asserted under Title VII. See Jackson v. Widnall, 99 F.3d 710, 716 (5th Cir. 1996) (Title VII preempts constitutional claims of employment discrimination asserted against the federal government); Rowe v. Sullivan, 967 F.2d 186, 189 (5th Cir. 1992) (the Supreme Court's decision in Brown stands "for the proposition that Title VII is the exclusive judicial remedy for claims of discrimination in federal employment").

## IV.  Defendant's Motion to Dismiss

Defendant argues that any claims plaintiff is attempting to assert for a downgrade in her 2003-2004 performance rating that she received in November of 2004, or for a proposed reassignment of duties made in March of 2005 should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted because plaintiff did not exhaust her administrative remedies for those claims.[26]  Plaintiff has not offered any argument in opposition to defendant's motion to dismiss these claims.  Since Local Rule 7.4 provides that a failure to respond will be taken as a representation of no opposition, the court concludes that defendant's motion to dismiss these claims should be granted.

## V.  Conclusions

Because plaintiff has failed to present evidence from which a reasonable trier of fact could conclude that any of the acts of which she complains were motivated by discriminatory animus based on race, sex, or age, or by an intent to retaliate for activity protected by Title VII, the court concludes that defendant is entitled to summary judgment on the claims that plaintiff has asserted under Title VII and on any claim that she may be attempting to assert under the ADEA.  Because Title VII provides

---

[26]Defendant's Motion to Dismiss and Motion for Summary Judgment, Docket Entry No. 7, p. 22.

the exclusive remedy for claims of employment discrimination asserted by federal employees, and because the employment discrimination claims that plaintiff has asserted under 42 U.S.C. § 1981 and Texas state law are factually indistinguishable from the claims that she has asserted under Title VII, the court concludes that defendant is entitled to summary judgment on the claims that plaintiff has asserted under § 1981 and Texas state law because they are preempted by Title VII.  Because plaintiff has not responded to defendant's argument that any claims plaintiff is attempting to assert for a downgrade in her 2003-2004 performance rating received in November of 2004 and/or for a proposed reassignment of duties made in March of 2005 should be dismissed for failure to exhaust administrative remedies, the court concludes that defendant's motion to dismiss these claims should be granted. Accordingly, Defendant's Motion to Dismiss and Motion for Summary Judgment (Docket Entry No. 7) are **GRANTED.**

    **SIGNED** at Houston, Texas, on this 5th day of January, 2007.

                                                 SIM LAKE
                                 UNITED STATES DISTRICT JUDGE